## W. O. JONES ET AL. v. THE PROVIDENT SAVINGS LIFE ASSOCIATION OF NEW YORK.

(Filed 1 April, 1909.)

**Insurance—Premiums—Agreement of Parties—Final Judgment.**

An agreement entered into between the parties to the suit, looking to an accounting between them in view of further adjustment required, should the plaintiff recover of defendant life insurance company certain premiums paid by him to it, cannot have the force and effect of changing the character of the action, after final judgment for defendant, and open up questions which involve an inquiry into the scheme and plan of defendant's organization and an investigation as to the regulation and management of the internal affairs of the company.

CAUSE heard on motion for judgment, before *Lyon, J.,* at January Term, 1909, of WAKE.

The case was originally tried before his Honor, *B. F. Long, J.,* and a jury, at October Term, 1907, of the Superior Court of said county.

The plaintiffs, filing their complaint, alleged, in substance, that they were holders and beneficiaries of an insurance policy in defendant company, and that by the terms of the policy the premiums payable thereon should never exceed the amount printed on the policy for the attained age of sixty-five years; that the holder, W. O. Jones, having attained and passed the said age, the defendant company had wrongfully assessed against him and had compelled payment of premiums largely in excess of the amount demandable under the contract and policy, to his damage. The plaintiffs further allege that W. O. Jones was induced to enter into said contract by the false and fraudulent assurances on the part of defendant's general agent that the premiums on the policy would never exceed the amount printed thereon for an attained age of sixty-five years, the specific relief demanded being set forth, as follows:

1. "That the said premiums be declared excessive, and that an account be taken of all sums paid on premiums since said plaintiff, W. O. Jones, attained the age of sixty-five, in excess of the rate prescribed for that age on the back of the policy,

and that the defendant be adjudged to pay the same to the plaintiffs, and that it be declared that all future premiums shall conform to the representations and agreements as aforesaid.

2. "That if this reasonable prayer be not granted, the entire amount of the premiums, with interest thereon, be paid the plaintiffs by the defendant and said policy be rescinded."

Denial was made of these allegations; and, on issues submitted, the jury rendered the following verdict:

1. "At the times alleged in the complaint was J. Sterling Jones the general agent of the defendant company?" Answer: "No."

2. "Did the said J. Sterling Jones, as the general agent of the defendant company, induce the plaintiff W. O. Jones, by false and fraudulent representations, to apply for insurance in the terms of the application and to take out a policy of insurance from the defendant company, as alleged in the complaint, upon an understanding and agreement, made at and before the delivery of the policy, that the premium upon the said policy should never exceed the rate prescribed in a table on the back of the said policy for the age of sixty-five?" Answer: "No."

3. "Was the plaintiff W. O. Jones, by reason of said alleged false and fraudulent representations and agreements, induced to accept the said policy and pay the premiums thereon, and was he thereby misled and prevented from examining and questioning the terms of the policy, as so represented and agreed, at and before the delivery of the policy and until he had attained the age of sixty-seven years and until the said premiums began to exceed the rate prescribed for the age of sixty-five?" Answer: "No."

4. "Was the said J. Sterling Jones authorized and empowered by the defendant company, as its agent, under his contract with the defendant, to issue policies of insurance or to change or alter the contents thereof?" Answer: "No."

5. "If the said J. Sterling Jones, under his contract with the defendant, was not authorized and empowered to issue policies of insurance or to change or alter the contents thereof at and before the delivery of the policy by the defendant to the plaintiff W. O. Jones; did the plaintiff Jones, at or before the acceptance of the policy, have notice from the defendant or its agent

that the powers of the said J. Sterling Jones were so limited that he was not authorized to issue policies of insurance or to change or to alter the contents thereof?"   Answer: "No."

6. "Did the said W. O. Jones, after the delivery and acceptance of the policy by him, continue to pay the alleged excessive premiums thereafter, under protest of himself or his agent, and by reason of assurances and promises of the defendant company, through J. Sterling Jones or other agents of the defendant, as alleged by the plaintiff, that the said excessive payments, as alleged, would be properly adjusted so as to conform to the alleged representations and agreements as set forth in the complaint, and did the plaintiff fail to sue the defendant by reason of such assurances and promises and at the request of defendant's agent or agents?"   Answer: "Yes."

7. "Did the plaintiff W. O. Jones, after having an opportunity to learn the character, terms and conditions of the policy, without disavowing its terms and giving notice of protest to the defendant or its agents, by his acts, conduct, dealings and negotiations with the defendant, either himself or through and by his agent, ratify or acquiesce in the terms of the said policy?"   Answer: "Yes."

8. "How many premiums did plaintiffs pay under protest?"   Answer: "Two."

9. "Did plaintiff W. O. Jones ascertain that the policy of insurance was not in accordance with the alleged representations of J. Sterling Jones more than three years before the institution of this action?"   Answer: "Yes."

10. "Did the plaintiff W. O. Jones ascertain that the policy of insurance was not in accordance with the alleged representations of J. Sterling Jones more than ten years before the institution of this action?"   Answer: "No."

11. "Did plaintiffs, before the commencement of this action, demand of defendant a reasonable and equitable adjustment of the matters in difference or, upon refusal, a return of the premiums, and was such demand refused?"   Answer: "No."

12. "Did the plaintiffs' cause of action arise more than three years before the beginning of the suit?"   Answer: "No."

13. "Did the plaintiffs' cause of action arise more than ten years before the beginning of the action?"   Answer: "No."

14. "Has defendant constantly carried on business and maintained an agency in this State, in compliance with the laws of this State, since the date of the policy issued to plaintiff, 1 August, 1887?" Answer: "Yes."

15. "Did defendant file with the Secretary of State copies of its charter and by-laws, as required by chapter 62, Public Laws 1899, and thereupon become domesticated in this State?" Answer: "Yes."

16. "What amount, together with interest, has been paid on said policy in excess of the rate prescribed for the age of sixty-five in the lower or second table on the back of said policy?" Answer: "One thousand seven hundred and fifty-four dollars and nine cents" (by consent).

17. "What has been the cost to the defendant of carrying the liability imposed upon it by this policy issued to the plaintiff, since the same was issued, 1 August, 1887, to the present time?" Answer: (This issue not to be answered by the jury.)

And the court below, being of opinion that, according to the admitted stipulations of the policy, the premiums could never exceed the maximum rate for the attained age of sixty-five years, and that all premiums paid in excess of that amount were illegal, gave judgment in favor of plaintiff for the sum of $1,754.09, the amount of such excessive premiums, as established by the verdict. On appeal this judgment was reversed, and for reasons assigned in the opinion, written by the Chief Justice, as reported in 147 N. C., 540, it was ordered that, on the verdict and the admitted stipulations of the policy, judgment should be entered for defendant. This opinion having been certified down, and the defendant having moved for judgment in accordance therewith, the plaintiffs resisted the motion and filed a petition in the cause, alleging that, under and by virtue of an agreement in the cause, entered into between the parties, of date 20 April, 1907, and whereby the defendant had obtained a continuance of the same, the plaintiffs were entitled to have the rule or rules established and declared in this action by which future assessments and dividend credits should be made. It was further urged that this relief was within the scope and purpose of the original action. The petition was disallowed, in so far as the

same contemplated further litigation in this cause between the parties, and final judgment given for defendant on the verdict as rendered.

It was further provided in said judgment that no forfeiture of the policy should be declared by reason of the nonpayment of any premiums on and after 20 April, 1907, and the right of the plaintiffs to challenge the validity and correctness of all premiums or assessments or dividends since said date was secured and preserved. From the refusal of the court to allow further litigation between the parties in the cause now constituted the plaintiffs excepted and appealed.

*Shepherd & Shepherd* and *J. W. Hinsdale* for plaintiffs.
*J. H. Pou* for defendant.

HOKE, J., after stating the case: The construction and interpretation of this contract of insurance, and the effect of the stipulations therein, and also of the verdict rendered by the jury, were all involved and presented on the former appeal in the cause, and after full and careful consideration the Court, being of opinion with defendant, directed that judgment be entered in its favor. This opinion having been certified down, it became the duty of the judge below to comply with the order made, and there is no error to plaintiffs' prejudice in the judgment as entered. *Dobson v. Simonton,* 100 N. C., 56; *Calvert v. Peebles,* 82 N. C., 334. And we are of opinion that there is nothing in the scope of the original complaint, nor in the agreement made in the cause, to require or justify the Court in opening up the controversy, as desired by the plaintiff.

The action was instituted and tried on the theory that the amount of the premiums to be assessed against the holder were fixed and expressed at the attained age of sixty-five years, and could in no event ever exceed that sum. It was further contended that, if this were not true, the plaintiff had been induced to enter into the contract under false and fraudulent assurances that this was its purport, and judgment was demanded in the one case for all premiums wrongfully collected in excess of the stipulated amount, or, if this was not the correct interpretation of the contract on its face, and fraud was established by the verdict, that the contract relation be severed and all premiums

collected should be returned.  Defendant controverted both posi-
tions taken by plaintiffs, and claimed, further, that if recovery
was had by plaintiff the cost and value of the insurance which
the company had carried on the life of W. O. Jones should be
allowed and deducted from any recovery plaintiff should make.
Issues were framed determinative of the substantial issues aris-
ing on the pleadings as understood by both parties, as no objec-
tion to the issues from either appear in the record, and the jury
have rendered a verdict against the plaintiffs on their allegations
of fraud, and the court has held against their legal position as
to the force and meaning of the stipulations of the contract,
and the agreement relied upon by plaintiffs was never intended
to have the effect contended for by the plaintiffs.  This agree-
ment was entered into between the parties in April, 1907, on
condition that defendant should be granted a continuance.  Its
principal intent and purport was to relieve the plaintiffs of the
payment of further premiums pending the litigation, and to·
prevent the forfeiture of the policy by reason of nonpayment.
This effect has been allowed it in the judgment as entered by
the court, and the intimations in the agreement, looking to a
further accounting between the parties, were evidently made in
view of further adjustment to be required in case the plaintiffs
should succeed.  This was the view of the agreement entertained
by the judge below, the same who presided at the trial of the
cause, as indicated by the judgment concerning it, entered and
signed by him at October Term, 1907, as follows:

"CONSENT ORDER.

"NORTH CAROLINA—Wake County.

Superior Court, October Term, 1907.

"Jones *et al. v.* Provident Life Assurance Society of New York.

"In this case it is agreed that, if judgment be given finally
for plaintiffs, defendant shall be entitled to credits on said judg-
ment for all unpaid premiums, with interest from date when
such premiums should have been paid.

"This order is made in furtherance of an agreement of coun-
sel that premiums falling due after 1 February, 1907, should

not be paid until the final termination of the suit, and then at the rates which the court should hold the legal rate of premiums.

"November 6, 1907.                    *Judge Presiding."*

And, in our opinion, it·cannot be maintained that a collateral agreement of this character should have the force and effect to change the scope of the action and open up questions which involve an inquiry into the scheme and plan of defendant's organization and an investigation as to the regulation and management of the internal affairs of the company. Such a result is not within the scope of the action as originally constituted, was never contemplated by the parties; and is not a just or correct interpretation of the agreement relied upon.

There is no .error, and the judgment below will be

Affirmed.